UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CAROL MURPHY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-06-62-B-W |
| | ) | |
| STATE OF MAINE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

Carol Murphy filed suit in the United States District Court for the District of Maine against the state of Maine and numerous other parties for alleged civil rights violations arising out of an animal cruelty case against her in state court. This Order addresses two motions to dismiss: one by the town of Jay; and the other by Betty Jesperson, Frank Blethen, The Morning Sentinel, Danielle Gamiz, Kennebec Journal, and Blethen Newspapers Corporation (the "Media Defendants"). This Court defers ruling on the town of Jay's motion to dismiss and grants the Media Defendants' motion to dismiss.

**I. Standard of Review**

Rule 12(b)(6) provides, in part:

> Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . .

FED. R. CIV. P. 12(b)(6). "In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine*

*Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998)).  A defendant is entitled to dismissal only if it "'appears to a certainty that the plaintiff would be unable to recover under any set of facts.'"  *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001) (quoting *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir. 1996)); *see also Nethersole v. Bulger,* 287 F.3d 15, 18 (1st Cir. 2002).

## II. Motion to Dismiss:  Town of Jay

The town of Jay moves to dismiss on the ground that "the [Amended] Complaint does not contain a single allegation of fact related to the Town of Jay."  *Mot. to Dismiss by Town of Jay* at 1 (Docket # 31).  Although Ms. Murphy's Amended Complaint names the Town as a defendant in its caption, it makes no reference to Jay in the body of the Amended Complaint.  The Amended Complaint does allege that a Wayne Atwood is a Jay resident and is being "sued in his official and individual capacity."  *Amend. Compl.* ¶ 41 (Docket # 4).  It also alleges that as of December 2003, Mr. Atwood was a dog catcher and engaged in a variety of actions leading to the investigation and prosecution of Ms. Murphy.  *See id.* ¶¶ 81-97.  But for the general allegation of Mr. Atwood's Jay residency, the Amended Complaint does not, however, link Mr. Atwood's actions to the town of Jay.

In her response to the motion to dismiss, Plaintiff alleges for the first time that the "town of Jay, Maine employs [the] dog catcher, Wayne Atwood."  *Pl.'s Resp. to Mot. to Dismiss by Def. Town of Jay* at 2 (Docket # 43).  She then levies a series of accusations against Mr. Atwood.  *Id.*  As Plaintiff explains it, Mr. Atwood undertook allegedly unlawful actions while "representing his authority as emanating from his employment as

2

dog catcher for the Town of Jay, [this] means that under the law, the Town of Jay is liable for the conduct of its employees." *Id.* at 4. In a footnote, the town of Jay responded *inter alia* that it "has not employed Mr. Atwood as its dog catcher now or in the past." *Reply by the Town of Jay in Support of Mot. to Dismiss* at 2 n.1 (Docket # 46) (*Def.'s Reply*).

"The fate of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint." *Young v. Lepone*, 305 F.3d 1, 10-11 (1st Cir. 2002); *see also Kissinger v. U.S. Postal Serv.*, 801 F.2d 551, 553 (1st Cir. 1986) ("Dismissal for failure to state a claim under F.R.C.P. 12(b)(6) is appropriate only where the complaint *on its face* does not allege facts sufficient to sustain the plaintiff's case." (emphasis supplied)). A district court evaluating a Rule 12(b)(6) motion must "accept as true the facts alleged by plaintiffs in their complaint, drawing all reasonable inferences in their favor." *Calderon-Ortiz v. Laboy-Alvarado*, 300 F.3d 60, 63 (1st Cir. 2002). Applying this rule, the Plaintiff's Amended Complaint fails to set forth a cognizable basis on which she may proceed against the town of Jay.

In her response, Plaintiff makes statements that would survive the motion to dismiss, but she has failed to move to amend her Amended Complaint. By making these allegations in her response and not in her Amended Complaint, Ms. Murphy runs afoul of the rule that matters outside the pleadings may not be considered in a motion to dismiss and a court's decision must be based on the sufficiency of the allegations in the complaint.[1] FED. R. CIV. P. 12(b)(6); *see Garrett v. Tandy Corp.*, 142 F. Supp. 2d 117,

---

[1] Although there are some exceptions not applicable here, Rule 12(b)(6) contemplates that if matters outside the pleadings are considered, the motion should then be treated as a motion for summary judgment and the parties should be given an opportunity to present all material in accordance with Rule 56. FED. R. CIV. P. 12(b)(6). This the Court declines to do; instead, it is granting the Plaintiff an opportunity to amend

118 n.1 (D. Me. 2001), *aff'd in part and rev'd in part on other grounds*, 295 F.3d 94 (1st Cir. 2002). Mindful Plaintiff is acting *pro se*, this Court will give her an opportunity to articulate her claims by amending her Amended Complaint.[2] *See Spickler v. Lee*, 208 F. Supp. 2d 68, 69 n.1 (D. Me. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) and *Arnold v. Moore*, 980 F. Supp. 28, 33 (D.D.C. 1997)). However, to move this case along, this Court will impose restrictive time limitations on the parties.

This Court gives Ms. Murphy seven (7) days from the date of this Order to file a Second Amended Complaint.[3] If Ms. Murphy does not do so within that time, this Court will grant the town of Jay's motion to dismiss, since as currently framed, the Amended Complaint fails to state a claim upon which relief can be granted against the Town. If she does, the Town must file an answer to the Second Amended Complaint within seven (7) days after being served in accordance with Rule 12(a) of the Federal Rules of Civil Procedure. In addition, the Town must alert the Court within the same time period as to whether it wishes to proceed on this motion to dismiss.

### III.  Motion to Dismiss:  Media Defendants

The group of defendants collectively referred to as the Media Defendants move to dismiss the Amended Complaint as "none of the Media Defendants are state actors or acting under color of state law and, therefore, are not subject to liability for constitutional civil rights violations" and on grounds that the statute of limitations has run on any libel or slander allegations. *Mot. to Dismiss by Defs. Betty Jesperson et al.* at 1 (Docket # 34)

---

her Amended Complaint. *See* FED. R. CIV. P. 15(a) (explaining that "a party may amend the party's pleading . . . by leave of court . . . and leave shall be freely given when justice so requires").

[2] Plaintiff has already amended her Complaint once and knows how to do so. *See Amend. Compl.* (Docket # 4).

[3] In light of the Town's assertion that it has not employed Mr. Atwood as a dog catcher, *Def.'s Reply* at 2 n.1, the Court reminds Plaintiff that she must have a good faith basis for any allegation that Mr. Atwood has been employed by the Town. *See* FED. R. CIV. P. 11(b).

(*Media Mot.*).  With respect to Frank Blethen, the motion seeks dismissal on the ground that the Amended Complaint contains no allegations against him.  *Id.*

### A.  State Actors

The ten counts in the Amended Complaint allege constitutional and section 1983 civil rights violations.[4]  However, unless private entities are state actors "either directly or by a close enough nexus to the state in defined ways," there can be "neither a [42 U.S.C.] § 1983 claim nor a claim against them for violation of constitutional rights."  *Tomaiolo v. Mallinoff*, 281 F.3d 1, 8 (1st Cir. 2002) (citation omitted).  Acts by a nominally private entity may comprise state action if "the private entity is engaged in a traditionally exclusive public function; is 'entwined' with the government; is subject to governmental coercion or encouragement; or is willingly engaged in joint action with the government."  *Logiodice v. Trs. of Me. Cent. Inst.*, 296 F.3d 22, 26 (1st Cir. 2002) (citation omitted).

The closest the Amended Complaint comes to outlining *any* connection between the Government and the Media Defendants is the conclusory allegation that since "MEDIA printed the story without checking their facts" this proves that the Media Defendants were "working with agents, citizens and officials to let people know that Ms. Murphy's stolen property was for sale at KVHS."  *Amend. Compl.* ¶ 107.  This is insufficient to categorize the newspapers, or its employees, as state actors.  *See Griggs v. Corsicana Daily Sun*, No. 3-03-CV-0419-R, 2003 WL 21649965, at *2 (N.D. Tex. Mar. 31, 2003) (unpublished opinion) (Corsicana Daily Sun "is a private newspaper and not a state

---

[4] Specifically, the Amended Complaint alleges violations of Ms. Murphy's First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution, (Counts I, III-VII); violations of the Maine Constitution and conspiracy under §§ 241, 242, 1983, and 1985 (Counts II, VIII, X); and a deprivation of her rights by "bribery, fraud and swindles," presumably under the federal mail fraud statute (Count IX).  Although Count X of the Amended Complaint is numbered "X," the body of the Count states that it is the "ELEVENTH CLAIM FOR CONSPIRACY . . . ."

actor"); *Johnson v. Suffolk Univ.*, No. 02-12603-PBS, 2002 WL 31426734, at *1 (D. Mass. Oct. 28, 2002) (unpublished opinion) (Boston Herald not a state actor); *McRae v. Marin County Sheriff Dep't*, No. 00-2712-TEH, 2000 WL 1482879, at *2 (N.D. Cal. Oct. 3, 2000) (unpublished opinion) (same); *Scheetz v. Morning Call, Inc.*, 747 F. Supp. 1515, 1519-20 (E.D. Pa. 1990) (same); *Wellman v. Williamson Daily News, Inc.*, 582 F. Supp. 1526, 1527-28 (S.D. W. Va. 1984) ("Manifestly, the publication of a newspaper does not involve 'state action.'") (citations omitted).  Ms. Murphy's section 1983 and constitutional claims must fail against the Media Defendants.[5]

**B. Defamation**

Defendants raise an additional argument, namely, that any claim for libel and slander is time-barred as the applicable statute of limitations is two years, 14 M.R.S.A. § 753, and the limitations period accrues upon publication of the specific defamatory statements. *See Springer v. Seaman*, 658 F. Supp. 1502, 1511 n.10 (D. Me. 1987); *Tanguay v. Asen*, 1998 ME 277, ¶ 7, 722 A.2d 49, 50.  As Defendants note:

> Plaintiff filed suit on May 22, 2006 and added the Media Defendants as parties on May 30, 2006.  The Media Defendants later accepted service.  The three articles mentioned in the Complaint were all published more than 2 years prior to the filing of this action.  The Jesperson articles were published on April 29, and March 24, 2004 (Compl. ¶¶ 107, 117).  The Gamiz article

---

[5] Ms. Murphy cites no statutory authority for Count IX, alleging a deprivation of her rights by "bribery, fraud and swindles." *Amend. Compl.* ¶¶ 165-66.  It may be that the authority for this cause of action is 18 U.S.C. § 1341, governing "frauds and swindles."  If so, section 1341 does not provide for a private cause of action, and so, to the extent it survives the foregoing analysis, this claim must be dismissed. *See Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir. 1999) (complaint alleging violation of 18 U.S.C. § 1341 dismissed as there is no private cause of action under the mail fraud statute); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1179 (6th Cir. 1979); *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 347 (5th Cir. 1977); *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 17 (D. Mass. 2004); *Swartz v. Schering-Plough Corp.*, 53 F. Supp. 2d 95, 105 (D. Mass. 1999); *Delta Educ., Inc. v. Langlois*, 719 F. Supp. 42, 50 (D.N.H. 1989). Similarly, Count VIII, to the extent that it relies on §§ 241 and 242 rather than § 1983, must be dismissed.  Sections 241 and 242 are criminal counterparts to section 1983; these statutes do not provide for a private cause of action. *See Rodi v. Ventetuolo*, 941 F.2d 22, 29 n.8 (1st Cir. 1991); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam); *Palmer v. Wells*, No. 04-12-P-H, 2004 WL 1790180, at *8 (D. Me. Aug. 11, 2004) (unpublished opinion); *Briand v. Lavigne*, 223 F. Supp. 2d 241, 251-52 (D. Me. 2002).

> was published on March 30, 2004. *Id.* ¶ 111. Plaintiff's claims are, therefore, time barred.

*Media Mot.* at 4. Plaintiff raises two arguments in response: (1) the "Continual [sic] Violation Doctrine" and (2) additional newspaper articles by the media which continued through May 12, 2005. *Pl.'s Resp. to Mot. to Dismiss by Defs. Betty Jesperson et al.* at 7 (Docket # 42) (*Pl.'s Resp.*). Defendants respond that the continuing violation doctrine does not apply outside the context of Title VII employment discrimination actions, and assert that the additional newspaper articles do not toll the limitation period as to the articles mentioned in the Amended Complaint. *Defs.' Reply in Support of Mot. to Dismiss* at 2-3 (Docket # 47) (*Def.'s Reply*).

It is unclear precisely under what legal authority Ms. Murphy is raising her libel and slander allegations, but the allegations are doomed regardless. It appears, from the Amended Complaint, that Ms. Murphy is asserting these grounds pursuant to her § 1983 counts – as she raises no separate count for libel and slander. The First Circuit has said that there are "two essential elements of an action under section 1983": first, that the conduct complained of has been committed under color of state law; and, second, that this conduct "violated a right secured to the plaintiff either by the Constitution or by federal law." *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995). For reasons just detailed, *see* section III(A), *supra*, Ms. Murphy cannot establish the first prong of the § 1983 test, because the Media Defendants are private entities. There is no need to proceed further.

However, casting a liberal eye over Plaintiff's *pro se* pleadings, this Court could analyze her libel and slander claims as brought not pursuant to § 1983, but pursuant to the Maine law of defamation. *See Burke v. Town of Walpole*, 405 F.3d 66, 93 n.35 (1st Cir.

7

2005).  Even under this approach, however, Ms. Murphy's claims must immediately fail as to Defendants Betty Jesperson, Danielle Gamiz, the Kennebec Journal, and the Morning Sentinel.  The Amended Complaint alleges that all of these defendants reside in the state of Maine.  *Amend. Compl.* ¶¶ 74-76, 78.  As Plaintiff also resides in the state of Maine, *see Amend. Compl.* ¶ 14, federal diversity jurisdiction is improper.  *See Griggs*, 2003 WL 21649965, at *2 n.1.  That leaves the Blethen Maine Newspapers Corporation (BMNC), a Washington-based company.  *See Amend. Compl.* ¶ 79.  It is doubtful that this Court has subject matter jurisdiction over BMNC;[6] even assuming the presence of subject matter jurisdiction, however, Ms. Murphy's claims against BMNC still fail.

As an initial matter, Plaintiff is correct that the Amended Complaint refers to an article published within the relevant limitations time period.  *See Amend. Compl.* ¶ 134.  However, the remaining articles are, as Defendants assert, outside the scope of the two-year limitation.  While the continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred, *see McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 866 (5th Cir. 1993), the doctrine is largely limited to Title VII discrimination cases.  *Id.* at 866 n.27; *see also O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001).  Equally unavailing for Plaintiff, the Maine Law Court has not applied the common law continuing tort doctrine outside the realm of trespass and

---

[6] For federal diversity jurisdiction under 28 U.S.C. § 1332(a)(1) to obtain, the plaintiff's complaint must allege complete diversity of the parties.  *See Strawbridge v. Curtiss*, 7 U.S. 267 (1806) (holding that a controversy is not between "citizens of different states," so as to give jurisdiction to the federal courts, unless all the persons on one side of it are citizens of different states from all the persons on the other side).  In other words, "there is diversity of citizenship if the plaintiff is a 'citizen' of a different state than *all* of the defendants."  *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991) (citing *Sweeney v. Westvaco Co.*, 926 F.2d 29, 32-33 (1st Cir. 1991)) (emphasis supplied).  Here, Ms. Murphy has not alleged she is a citizen of a different state than all defendants named in the Amended Complaint and, therefore, it is unlikely that this Court has subject matter jurisdiction over any defendant.

nuisance law, *see, e.g., Jacques v. Pioneer Plastics*, 676 A.2d 504, 506 (Me. 1996), although it has noted that it may be applied "when no single incident in a chain of tortuous [sic] activity can 'fairly or realistically be identified as the cause of significant harm.'" *McLaughlin v. Superintending Sch. Comm. of Lincolnville*, 2003 ME 114, ¶ 23 n.6; 832 A.2d 782, 789 n.6 (citation omitted).

Courts almost universally decline to apply the doctrine in defamation cases. *See Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002); *Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 449-50 (5th Cir. 1988); *Smith v. IMG Worldwide, Inc.*, __F. Supp. 2d__, No. 03-4887, 2006 WL 1582329, at *5-*6 (E.D. Pa. Jun. 7, 2006); *LaPointe v. Van Note*, No. 03-2128, 2004 WL 3609346, at *8-*9 (D.D.C. Nov. 9, 2004) (unpublished opinion); *Card v. Pipes*, 398 F. Supp. 2d 1126, 1133 (D. Or. 2004); *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 205 (E.D.N.Y. 1998); *Poth v. Paschen Contractors, Inc.*, No. 85-C-8499, 1987 WL 14604, at *3 (N.D. Ill. July 20, 1987) (unpublished opinion); *Flotech, Inc. v. E.I. DuPont de Nemours Co.*, 627 F. Supp. 358, 363-64 (D. Mass. 1985), *aff'd*, 814 F.2d 775 (1st Cir. 1987).

"'Repeated defamations do not constitute a continuing tort; rather, as courts have uniformly recognized, each separate defamatory statement itself constitutes a separate and distinct cause of action.'" *Smith*, 2006 WL 1582329, at *6 (quoting *Lewis v. Gupta*, 54 F. Supp. 2d 611, 616 (E.D. Va. 1999)); *see also Flotech, Inc.*, 627 F. Supp. at 363. As the other articles are barred by the statute of limitations, the only remaining question is whether Plaintiff states a claim for libel or slander with respect to the May 2005 article alleged in paragraph 134 of the Amended Complaint.

9

This Court concludes she has not. With respect to each time-barred article, Ms. Murphy alleged that the story was printed "without checking . . . [the] facts which falls under liable [sic] and slander," that "story facts were not checked and constitute libel and slander," and again "constitut[ed] libel and slander." *See Amend. Compl.* ¶¶ 107, 111, 117. With respect to the May 2005 article, however, Ms. Murphy's entire allegation reads:

> 134. May 13, 2005, Jespersen again wrote an article on Ms. Murphy. In it she quotes something said by Robinson which was not in the supposedly "true and accurate" transcripts. This was Robinson's comment that the version of When Vultures Rule that he entered into evidence at sentencing contained allegations that people were "vermin" and "whores". If Robinson's version of When Vultures Rule has such words in it, then the document Robinson entered as evidence against Ms. Murphy in court was tampered with as no such words were ever used by Ms. Murphy.

*Amend. Compl.* ¶ 134.

While somewhat muddled, this allegation does not appear to accuse Ms. Jesperson or the media of altering facts. In fact, when read in conjunction with paragraph 132 of the Amended Complaint, it suggests that A.D.A. Robinson and other actors in the court proceedings tampered with the evidence which the media then *accurately* reported.[7] As there is no allegation in paragraph 134 of inaccurate reporting, there can be no cause of action for defamation. *See McCullough v. Visiting Nurse Serv. of S. Me., Inc.*, 1997 ME 55, ¶ 10; 691 A.2d 1201, 1204 (holding that an "essential element of a claim for

---

[7] *See Amend. Compl.* ¶ 132 ("May 12, 2005 at Sentencing, [Justice] Jabar allowed new information to be admitted by the state against Ms. Murphy and neither her lawyer nor Ms. Murphy were allowed to see this information to determine whether it was an accurate copy of a document Ms. Murphy had written, 'When Vultures Rule'. Ms. Murphy believed that the copy was not what she had written because Robinson told the court that in the document, she had called people 'vermin' and 'whores'. (NOTE: That information was partially missing from the court provided transcript but please note that MEDIA printed part of what Robinson said at Sentencing and they quote him accurately in his use of the terms 'vermin' and 'whores'. . . .")).

defamation is the existence of a *false* and defamatory statement" (citation omitted) (emphasis supplied)).

### C. Frank Blethen

Defendants argue that the claims should be dismissed as to Frank Blethen because the Amended Complaint does not contain a single allegation of fact related to him. *See Media Mot.* at 5. In response, Plaintiff argues that "it is Frank Blethen who runs these newspapers. Therefore, it is Frank Blethen who allowed these false stories with false, patently untrue, information to be printed in two newspapers." *Pl.'s Resp.* at 6. Defendant neither concedes nor denies Mr. Blethen's relationship to the Blethen Maine Newspapers Corporation, instead asserting that the argument cannot stand "where the Complaint does not actually state an allegation that he 'runs the newspapers' – much less any allegation of any personal involvement in any of the three particular articles at issue." *Def.'s Reply* at 3.

This Court has considered allowing Ms. Murphy the opportunity to amend her Amended Complaint to correct her error of pleading. *See* section II, *supra*. However, even if this Court did allow Ms. Murphy the opportunity to allege that Mr. Blethen owns and operates the newspapers at issue here, this would not save her claims against him. Ms. Murphy's asserted claims against Mr. Blethen are derivative of her claims against the remaining Media Defendants. As the Court has dismissed the claims against the rest of the Media Defendants, she could not proceed even were the Court to credit her assertion that Mr. Blethen "runs these newspapers."

The motion to dismiss by the Media Defendants is GRANTED.

### IV. Conclusion

This Court defers ruling on the motion to dismiss filed by the town of Jay and allows Plaintiff seven (7) days to file a second amended complaint. This Court ORDERS the Amended Complaint dismissed as to Defendants Betty Jesperson, Frank Blethen, The Morning Sentinel, Danielle Gamiz, Kennebec Journal, and Blethen Newspapers Corporation.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of August, 2006