UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CAROL MURPHY,

v.                                                           C.A. No. 06-062-ML

STATE OF MAINE, et al.

### MEMORANDUM AND ORDER

This matter is before the Court on Defendants', Bourget & Bourget, P.A., Ronald W. Bourget, ("Bourget"), Lipman, Katz & McKee, P.A., and Walter E. McKee ("McKee") (collectively "Defendants") motions to dismiss. For the reasons set forth below, the motions are granted.

### I. Background

For background information, travel of this case, and standard of review, the reader is referred to the Court's February 1, 2007, Memorandum and Order dismissing Plaintiff's claim against Kennebec Valley Humane Society ("Kennebec"). See Memorandum and Order (Docket # 249).

### II. Analysis

Plaintiff's allegations against attorneys Bourget and McKee and their law firms arise as a result of Bourget's and McKee's representation of Plaintiff on state law criminal charges. Plaintiff engaged the services of Bourget, of the law firm of Bourget & Bourget, to "represent her in [state] court . . . " Second Amended Complaint at ¶ 155. Before her arraignment, Plaintiff alleges that Bourget met with the state's attorney and after the meeting she informed Bourget that she "would not accept any restrictions" and "that she wanted her stolen property back." Id. at ¶

1

156. Plaintiff alleges that she asked Bourget to "put in to vacate the verdict" of the "[a]nimal [p]ossession [h]earing" and to "put in" for a "suppression hearing" and a "jury trial[,]" but Bourget "refused." Id. Plaintiff fired Bourget and "reported him to the Overseers of the Bar Association." Id.

After Plaintiff fired Bourget she retained McKee, of the law firm of Lipman, Katz & McKee. Id. at ¶ 165. Plaintiff alleges that several days before her trial McKee informed her that he had not subpoenaed any of the witnesses or documents that she "had paid him to have in court . . . ." Id. at ¶ 168. Plaintiff informed McKee that this was "not acceptable" and that she needed the information and witnesses to "prove her innocence. . . ." Id. Plaintiff alleges that McKee informed her that she should "'throw herself on the mercy of the jury.'" Id. Plaintiff informed McKee that he "had better ask" for a continuance. Id. Plaintiff avers that McKee informed her that he spoke with "Judge Joseph Jabar" and that the "two of them . . . decided that whether or not [Plaintiff] liked it, the trial would go forward. . . ." Id. at ¶ 169. Plaintiff concludes that this "meeting" was a "felony" and violated her right to have "competent representation." Id.

Plaintiff avers that, on the first day of trial, she informed the court that there was "no problem" keeping McKee as her attorney as long as McKee "got the people and documents" Plaintiff requested. Id. at ¶ 170. Plaintiff avers that in response, McKee "jumped out of his seat and yelled, '[i]f I have to call witnesses, then I'm signing off this case'" and then left the courtroom. Id. at 170.

Plaintiff alleges that both Bourget and McKee "were swindling [Plaintiff] out of her savings purposefully, and/or they were part of the conspiracy against [Plaintiff] to deprive her of even her most basic legal rights." Id. at ¶ 173. Plaintiff alleges that "[n]either McKee nor


Bourget knew the law" and that both McKee and Bourget "took [her] money under false pretences [sic] of being knowledgeable lawyers." Id. at ¶ 172. Plaintiff lists a number of examples in which she alleges that both McKee and Bourget failed to adequately represent her interests. Id. at ¶¶ 168, 170, 172. Plaintiff concludes that "in the worst of light" McKee and Bourget were "involved in the domestic terrorist racketeering scheme" and "violated their [o]ath of [o]ffice and [u]ndertakings which is treason and the overthrow of the U.S. Constitution and the U.S. Government." Id. at ¶ 173.

Lawyers, although generally licensed by the state, "are not officials of government by virtue of being lawyers." In re Griffiths, 413 U.S. 717, 729 (1973). "[I]t is well-established that private attorneys are not state actors . . . ." Trask v. Campbell, No. Civ. 06-30-P-S, 2006 WL 1030100 at * 1 (D. Me. April 14, 2006) (Report and Recommendation), adopted, 2006 WL 1208028 (D. Me. May 4, 2006); see also Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980) ("participation by a private party in litigation, without more, does not constitute state action"); Brown v. Chaffee, 612 F.2d 497, 501 (10th Cir. 1979) (attorneys "do not act under color of state law solely by engaging in private litigation on behalf of their clients"); Scantland v. Barkovic, No. 2:06-CV-12158, 2006 WL 1851218 at *1 (E.D. Mich. June 30, 2006) (noting that conduct of a "retained attorney does not rise to the level of 'state action'" under 42 U.S.C. § 1983; an attorney does not act under color of state law "merely because" the attorney is a member of a state bar association; an attorney's status as an "officer of the court" does "not make that attorney an actor under color of state law" under 42 U.S.C. § 1983). Even a "private attorney who is sued for actions allegedly taken as court-appointed counsel does not act under color of state law." Malachowski v. City of Keene, 787 F.2d 704, 710 (1st Cir. 1986). Plaintiff once again fails to set forth any direct or inferential allegation in her second amended complaint that would support

the premise that Bourget, McKee, or their applicable law firms, were state actors. See generally Tomaiolo v. Mallinoff, 281 F.3d 1 (1st Cir. 2002). Moreover, Plaintiff's allegations are "bald and conclusory, and do not include sufficient factual detail to defeat a motion to dismiss." Malachowski, 787 F.2d at 711; see also Scantland, 2006 WL 1851218 at *2 (noting that "plaintiff's conclusory and unsupported allegations that his attorney conspired with state . . . officials are insufficient to state a claim under Section 1983").

The Court incorporates by reference its summary of the law and analysis outlined in its February 1, 2007, decision on Kennebec's motion to dismiss. See Memorandum and Order (Docket # 249). Plaintiff's claims against Defendants contain the same fatal flaws as those lodged against Kennebec. See id. Accordingly, the Court grants Defendants' motions to dismiss for the same reasons noted in the Memorandum and Order granting Kennebec's motion to dismiss. See id.[1]

### III. Conclusion

For the reasons set forth herein, Defendants' motions to dismiss are GRANTED.

SO ORDERED

_____
Mary M. Lisi
Chief United States District Judge
August 22, 2007

---

[1] In so far as Plaintiff's second amended complaint can be read as alleging a claim for professional negligence, this Court dismisses any such claim. Legal malpractice is "purely" a "state law claim" and is more appropriately addressed in state court. Trask, 2006 WL 1030100 at *1 n.1 and *2. Because the Court has dismissed the federal claims, the Court declines to exercise its supplemental jurisdiction over any potential remaining state law claim. See 28 U.S.C. § 1367(c)(3); see also DM Research, Inc. v. College Of American Pathologists, 2 F. Supp. 2d 226, 230 (D.R.I. 1998), aff'd, 170 F.3d 53 (1st Cir. 1999) ("[h]aving determined that the . . . federal claim[s] should be dismissed, the Court has discretion to determine whether it should exercise supplemental jurisdiction over [the state law] claim[]").